UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LINDA MARIE LAMB,

                                Plaintiff,

                   v.

NANCY A. BERRYHILL,[1] Commissioner of
  Social Security,

                                Defendant.
_____

**DECISION
and
ORDER**

**16-CV-00557F**
(**consent**)

APPEARANCES:         LAW OFFICES OF KENNETH HILLER
                        Attorneys for Plaintiff
                        KENNETH R. HILLER, and
                        BRANDI CHRISTINE SMITH, of Counsel
                        6000 North Bailey Avenue
                        Suite 1A
                        Amherst, New York  14226

                        JAMES P. KENNEDY
                        UNITED STATES ATTORNEY
                        Attorney for Defendant
                        Federal Centre
                        138 Delaware Avenue
                        Buffalo, New York  14202
                                and
                        PETER WILLIAM JEWETT, and
                        SANDRA M. GROSSFELD
                        Special Assistant United States Attorney, of Counsel
                        United States Attorney's Office
                        c/o Social Security Administration
                        Office of General Counsel
                        26 Federal Plaza – Room 3904
                        New York, New York  10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017.  Pursuant to Fed.R.Civ.P. 25(d), Berryhill is substituted for Carolyn Colvin as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On June 19, 2018, the parties to this action, in accordance with a Standing Order (Dkt. 19), consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned. (Dkt. 19-1). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on December 20, 2016 (Dkt. 10), and by Defendant on March 30, 2017 (Dkt. 16).

## BACKGROUND

Plaintiff Linda Marie Lamb ("Plaintiff" or "Lamb"), brings this action under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application for social security disability benefits filed with the Social Security Administration ("SSA"), on October 10, 2012, for Title II Disability Insurance benefits ("disability benefits"). In applying for disability benefits, Plaintiff alleges she became disabled on July 26, 2012, based on chronic obstructive pulmonary disease ("COPD"), fibromyalgia, lower back problems, sciatic nerve pain in her hips, and arthritis. AR[2] at 167. Plaintiff's application was denied February 8, 2013, AR at 73-78, and on April 8, 2013, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"), AR at 79-80, which was held February 18, 2015, before ALJ Robert T. Harvey, at which both Plaintiff, represented by counsel, and Vocational Expert ("VE") Esperanza DiStefano ("VE DiStefano"), appeared and testified. AR at 32-62. On March 4, 2015, the ALJ issued a decision denying Plaintiff's claim, AR at 5-25, which Plaintiff appealed to the Appeals

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on October 13, 2016 (Dkt. 8).

Council.  AR at 31.  On May 11, 2016, the Appeals Council denied the request for review, rendering the ALJ's decision the Commissioner's final decision.  AR at 1-4.  On July 7, 2016, Plaintiff commenced the instant action seeking judicial review of the ALJ's March 4, 2015 decision.

On December 12, 2016, Plaintiff filed a motion for judgment on the pleadings (Dkt. 10) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 10-1) ("Plaintiff's Memorandum").  On March 30, 2017, Defendant filed a motion for judgment on the pleadings (Dkt. 16) ("Defendant's Motion"), attaching the Memorandum of Law in Support of the Defendant's Motion for Judgment on the Pleadings (Dkt. 16-1) ("Defendant's Memorandum").  On May 3, 2017, Plaintiff filed Plaintiff's Response to Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 17) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is GRANTED in part and DENIED in part; Defendant's Motion is DENIED.  The matter is REMANDED for further proceedings consistent with this Decision and Order.

### **FACTS**[3]

Plaintiff Linda Marie Lamb ("Plaintiff" or "Lamb"), born June 29, 1972, was 42 years old as of the February 18, 2015 administrative hearing.  AR at 35.  Plaintiff, who lives with her husband and youngest daughter, graduated from high school, AR at 36, and has past relevant work experience as a social welfare examiner, income

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for judgment on the pleadings.

maintenance worker, and loan officer, AR at 44-46, work which, as performed by Plaintiff, qualifies as semi-skilled or skilled, and as sedentary or light. AR at 47, 57. Insofar as Plaintiff claims she is disabled by fibromyalgia, Plaintiff maintains she first experienced the pain she now alleges is disabling in 1989 while pregnant with her second child, and that the pain began affecting her activities in 2010, AR at 184-85, which is when Plaintiff was first diagnosed with fibromyalgia. AR at 279. Plaintiff stopped working on July 26, 2012, allegedly because of disabling pain Plaintiff attributes to her impairments. AR at 167.

Plaintiff's medical records contain several radiology test results showing essentially minimal osteoarthritic changes. Specifically, on September 17, 2011, X-rays of bilateral hips showed small enthesophyte (bony spur growing onto a bone where tendons or ligaments attach) along the left greater trochanter (large projector of the femur attaching to various muscles at the edge of the hip). AR at 229. On June 13, 2012, a lumbar spine MRI showed degenerative joint disease at L5-S1. AR at 275. On July 26, 2013, Plaintiff was diagnosed with Raynaud's syndrome when her fingers turned white and purple when driving. AR at 309-12. On November 1, 2013, a right hip MRI demonstrated the possibilities of a superior labral tear. AR at 388.

In 2010, Plaintiff was first diagnosed with fibromyalgia, AR at 279, for which she was followed by primary care physician Elizabeth R. Osborn, M.D. ("Dr. Osborn"), and Physician Assistant Scott Piatt ("PA Piatt") and received pain medication injections administered by pain management specialist Billy R. Carstens, DO ("Dr. Carstens"). In particular, Dr. Carstens administered a left S1 transforaminal epidural steroid injection on August 16, 2012, AR at 227; trigger point injections of bilateral paraspinal muscles of

lumbosacral region at S1 level for a total of two trigger point injections on September 4, 2012, *id.* at 225; trigger point injections of left paraspinal muscle of lumbosacral region at L1, bilateral paraspinal muscles of the lumbosacral region at L4 and right gluteus maximus for a total of four trigger point injections on November 26, 2012, *id.* at 330; right S1 transforaminal epidural steroid injection and trigger point injection of the right quadratus lumborum muscle on January 17, 2013, *id.* at 334, 347; right L4 transforaminal epidural steroid injection on May 6, 2013, *id.* at 340, 346; right hip inter-articular injection with fluoroscopy on December 18, 2013, *id.* at 368; bilateral hip injection with fluoroscopy on March 10, 2014, *id.* at 366; trigger point injections of bilateral quadratus lumborum, bilateral paraspinal muscle lumbosacral region L1 and L5 on May 23, 2014, *id.* at 419; and unspecified trigger point injections on July 23, 2014, *id.* at 415. In an effort to more permanently address her continuing pain, Plaintiff, on October 20, 2014, underwent radiofrequency ablation of her spinal nerve. AR at 438-41, 447.

On numerous occasions, Plaintiff had positive bilateral straight-leg raising tests in the seated and supine positions, often with tenderness upon palpation at various points, particularly of the spine. *See* AR at 262 (6/21/2012 – upon examination, Plaintiff has multiple areas of tenderness even to light touch); 260 (7/12/2012 – multiple areas of tenderness); 230 (8/14/2012) (tenderness noted in bilateral thoracic and lumbosacral regions); 328 (10/29/2012 – minimal moderate tenderness overlying spine and paraspinous regions bilaterally at T10, T11, T12, and L1-L5 to bilateral S1, at base of bilateral quadratus lumborum muscles, and at lower thoracic paraspinal muscle regions); 332 (12/14/2012) (diffuse tenderness throughout all paraspinal muscles of

spine); 336-37 (1/28/2013 - noting upon palpation tenderness overlying spine and paraspinal muscle regions bilaterally in spine and quadratus lumborum muscles); 338 (4/5/2013 - tender throughout spine and over bilateral posterior superior iliac spine); 342 (8/22/2013 - tender particularly bilaterally from L4-L5, S1, bilateral sacroiliac joint ("SI") and posterior superior iliac spine ("PSIS") regions); 344 (9/19/2013 - same); 378 (2/25/2014); and 397 (5/5/2014).[4]  Physical examinations repeatedly showed numerous trigger points.  *See* AR at 230 (8/14/2012 – trigger points detected in bilateral thoracic and lumbosacral regions); 332 (12/14/2012 – multiple trigger points throughout the thoracic and lumbosacral regions on bilateral sides); 337 (1/28/2013 – trigger point tenderness on the thoracic, scapular, and lumbosacral regions and the bilateral quadratus lumborum muscles); 338 (4/5/2013 – trigger points and tender points throughout the cervical, thoracic, and lumbosacral regions, and over bilateral posterior superior iliac spine areas); 342 (8/22/2013 – tenderness overlying the spine and paraspinal muscle regions bilaterally from approximately L4-L5 and bilateral SI and PSIS regions); 344 (9/19/2013 – same); 411 (2/10/2014) (trigger points noted in the bilateral quadratus lumborum muscles); 421 (5/16/2014) – trigger points throughout the thoracic, lumbosacral, cervical, and scapular regions bilaterally); 394 (7/7/2014 – palpatory tenderness over the greater trochanter, trochanteric bursa, piriformis fossa, SI joints, and lumbar spine); 417 (7/10/2014 – tenderness bilaterally throughout lumbar spine, L5-S1, SI and PSIS, and right quadratus lumborum muscle); and 414 (9/2/2014 – active trigger point tenderness in the bilateral lumbosacral regions inclusive of quadratus lumborum muscles and gluteus musculature, right greater than left).

---

[4] On March 31, 2014, SLR was positive on the right in the supine position, but negative bilaterally in the seated position.  AR at 374.

On December 18, 2012, Plaintiff underwent a consultative internal medicine examination by Samuel Balderman, M.D. ("Dr. Balderman"). AR at 279-282. Plaintiff's main medical complaint was fibromyalgia, for which medications did not help. AR at 279. Plaintiff's pain was sharp and constant, present mostly in her lumbar spine and hips. *Id.* Dr. Balderman's examination was largely unremarkable with Plaintiff only moderately limited in lifting, pushing and pulling for four to six weeks while Plaintiff recovered from recent umbilical hernia repair. AR at 279-81. Dr. Balderman diagnosed Plaintiff with status post hernia repair, and somatosensory disorder. *Id.* at 281. On December 18, 2012, Plaintiff also underwent pulmonary function testing, *id.* at 283-87, but Dr. Balderman did not opine as to any pulmonary disorder.

## DISCUSSION

**1.      Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 month." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were

based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

## 2. Disability Determination

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* Next to be determined is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent such an

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

impairment, the applicant is not eligible for disability benefits.  *Id.*  Third, if there is an

impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration

requirement,[6] there is a presumption of inability to perform substantial gainful activity,

and the claimant is deemed disabled, regardless of age, education, or work experience.

42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and

416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in

Appendix 1, the Commissioner must then consider the applicant's "residual functional

capacity," which is the ability to perform physical or mental work activities on a

sustained basis, notwithstanding the limitations posed by the applicant's collective

impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of

any past relevant work ("PRW"). [7]  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the

applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but

if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth

step, must consider whether, given the applicant's age, education, and past work

experience, the applicant "retains a residual functional capacity to perform alternative

substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168

F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§

404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four

---

[6] The duration requirement mandates the impairment must last or be expected to last for at least a
continuous twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

[7] "Past relevant work" or "PRW" is defined as work the claimant performed within the past 15 years as
substantial gainful activity, for a sufficient period of time for the claimant to learn how to perform the work.
20 C.F.R. §§ 404.1560(b)(1), 404.1565, and 416.960(b).  Whether past work qualifies as relevant is
determined either as the claimant actually performed it, or as the work generally is performed in the
national economy.  *Id.*

steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R.

§§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir.

2008).

In the instant case, the ALJ found Plaintiff meets the Act's insured status

requirement through December 31, 2016, AR at 10, Plaintiff did not engage in

substantial gainful activity since July 26, 2012, her alleged disability onset date, *id.*,

Plaintiff suffers from the severe impairments of fibromyalgia, bilateral hip pain, and

discogenic lumbar spine, *id.*, but that Plaintiff does not have an impairment or

combination of impairments meeting or medically equal to the severity of any listed

impairment in Appendix 1.  *Id.*  The ALJ found that Plaintiff retains the residual

functional capacity to perform a reduced range of sedentary work with limitations of

lifting and carrying up to 10 pounds, sitting for six hours and standing or walking for two

hours in an eight-hour workday, no working in area of unprotected heights, or heavy,

moving, or dangerous machinery, or in areas subject to exposure to coldness or

extreme heat, no climbing ropes, ladders or scaffolds, and occasional limitations to

bending, climbing, stooping, squatting, kneeling, crawling, and pushing and pulling with

the upper extremities.  *Id.* at 10-11.  Based on these limitations, the ALJ determined

Plaintiff could perform her past relevant work as a caseworker and loan officer both as

those jobs are classified in the Dictionary of Occupational Titles as well as based on

how Plaintiff described her actual performance.  *Id.* at 19.  Accordingly, the ALJ

determined Plaintiff is not disabled as defined under the Act.  *Id.* at 20.

In support of judgment on the pleadings, Plaintiff argues the ALJ erred in relying

solely on the consultative opinion of Dr. Balderman, Plaintiff's Memorandum at 16-22,

and made a credibility determination that is not supported by substantial evidence in the record.  *Id.* at 22-26.  Defendant, in contrast, maintains the ALJ properly relied on Dr. Balderman's opinion, which was not stale because it considered all of Plaintiff's alleged impairments, Defendant's Memorandum at 21-23, and the ALJ properly assessed Plaintiff's credibility.  *Id.* at 23-25.  In further support of judgment on the pleadings, Plaintiff repeated her argument that Dr. Balderman's opinion was stale by the time of the administrative hearing, Plaintiff's Reply at 1-5, and the ALJ's credibility determination was not supported by substantial evidence.  *Id.* at 5-7.  Because no challenge is raised to the first two steps of the five-part analysis, the court does not address them, but limits its review to only the third, fourth and fifth steps, *i.e.*, whether the ALJ's determination that Plaintiff retains the residual functional capacity to perform her past relevant work, as well as to perform a reduced range of sedentary work that exists in the national economy is supported by substantial evidence in the record.

## A.    Third Step

At the third step of the analysis, a determination that the plaintiff has an impairment that meets or is equivalent to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement,[8] creates a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  The burden is on Plaintiff to "demonstrate that her disability [meets][9]

---

[8] The duration requirement mandates the impairment must last or be expected to last for at least a continuous twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.
[9] Unless otherwise indicated, bracketed material is in the original.

'*all* of the specified medical criteria' of [the relevant impairment Listing]." *Otts v. Commissioner of Social Sec.*, 249 Fed.Appx. 887, 888 (2d Cir. Oct. 5, 2007) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (italics in original), and citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (discussing burden of proof applicable to five-step analysis)). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530.

In the instant case, the listed impairments considered by the ALJ relative to Plaintiff's disability benefits claim included Listing 1.02A (major dysfunction of a major peripheral weight-bearing joint (due to any cause), resulting in an inability to effectively ambulate), and Listing 1.04A (disorders of the spine). The ALJ found Plaintiff's impairments did not meet the criteria for disability under either of these two Listings, AR at 11, and Plaintiff does not dispute this determination. Nor does Plaintiff dispute the ALJ's determination that her COPD and anxiety were not sufficiently severe impairments to merit analysis according to the relevant Listings. *Id.* Nevertheless, although the ALJ determined Plaintiff's fibromyalgia was a severe impairment, indicating he considered fibromyalgia in combination with Plaintiff's other impairments, *id.*, the ALJ used the incorrect regulatory framework in analyzing Plaintiff's fibromyalgia.

In particular, as the ALJ noted, there is no listing for fibromyalgia. AR at 11. In the absence of any listing, the ALJ considered Plaintiff's fibromyalgia in the framework of Listing 14.02, pertaining to systemic lupus erythematosus, determining Plaintiff's condition did not meet the criteria of Listing 14.02. *Id.* In doing so, however, the ALJ committed legal error by failing to follow the directive of Social Security Rule ("SSR") 12-2P ("SSR 12-2P"), Titles II and XVI: Evaluation of Fibromyalgia, 2012 WL 3104869

(S.S.A. July 25, 2012).[10]  In issuing SSR 12-2P, the Commissioner recognized
fibromyalgia as a "syndrome" that "is a complex medical condition characterized
primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that
has persisted for at least 3 months."  2012 WL 3104869, at * 2.  In addition to providing
criteria for use in determining whether a claimant's fibromyalgia is a medically
determined impairment ("MDI"), 2012 WL 3104869, at ** 2-3, as well as delineating the
requisite documentation and evidence to support a determination of fibromyalgia, *id.* at
** 3-5,  SSR 12-2P provides that "longitudinal records reflecting ongoing medical
evaluation and treatment from acceptable medical sources are especially helpful in
establishing both the existence and severity of the impairment."  *Id.* at 3.  Further, SSR
12-2P specifically directs that at step 3 of a disability analysis, the ALJ must determine
whether the claimant's fibromyalgia medically equals a listing which, because there is
no listing for fibromyalgia, would be Listing 14.09D pertaining to inflammatory arthritis.
*Id.* at * 6.  Accordingly, in the instant case, the ALJ's assessment of Plaintiff's
fibromyalgia according to Listing 14.02, *i.e*, for systemic lupus erythematosus (a chronic
inflammatory disease affecting any organ or body system), was erroneous and requires
remand.

Significantly, where, as here, "the claimant's symptoms, as described by the
medical evidence, appear to match those described in the Listings, the ALJ must
provide an explanation as to why the claimant failed to meet or equal the Listings."
*Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 52 (W.D.N.Y. 2002).  Where, however, the ALJ
fails to do so, the court may "look to other portions of the ALJ's decision and to clearly

---

[10] Although SSRs do not have the same force and effect as statutes or regulations, "[t]hey are binding on
all components of the Social Security Administration."  20 C.F.R. § 402.35(b)(1) (2007).

credible evidence in finding that his determination was supported by substantial evidence." *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982). If the reviewing court is "unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ," remand generally is required. *Id.* (internal citations omitted).

In the instant case, there is significant evidence in the record that Plaintiff was repeatedly diagnosed with fibromyalgia which possibly meets the criteria for inflammatory arthritis under Listing 14.09. In particular, SSR 12-2P provides that "[e]xtra-articular features of inflammatory arthritis may involve any body system," including*, inter alia*, the lungs and cardiovascular systems. 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 14.00.D.6.e(iii). Plaintiff's COPD is a restrictive lung disease, whereas Raynaud's syndrome is included among the cardiovascular system deformities. *Id.* The record contains a plethora of evidence that Plaintiff regularly sought pain relief including repeated nerve block injections and radiofrequency spinal nerve ablation when medications did not relieve her pain. *See* Facts, *supra*, at 4-5. Significantly, no treating source questioned the sincerity of Plaintiff's pain complaints, and Plaintiff repeatedly indicated pain as the reason why she left what the record indicates financially was desirable employment for a worker with no education beyond high school. AR at 47, 150-61, 167. *See Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (acknowledging ALJ's credibility determination should take into account a disability benefits claimant's prior work history, with a good work history deemed probative of credibility and a poor work history either deemed probative the claimant's testimony of disability is truthful, or indicative of a claimant's unwillingness to work). Accordingly, in this case the reviewing

court is "unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ," requiring remand.  *Berry*, 675 F.2d at 469

The ALJ's error at the third step of the disability analysis thus requires remand for further consideration of Plaintiff's claim particularly consistent with SSR 12-2P.

## B.    Fourth and Fifth Steps

Although the undersigned is remanding the matter for further analysis at step three, upon such remand, should the ALJ continue to find Plaintiff is not disabled based on the Listing of Impairments, including as discussed in SSR 12-2P, the next step is to consider the applicant's "residual functional capacity," *i.e.*, the ability to perform physical or mental work activities on a sustained basis despite limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any PRW.  20 C.F.R. §§ 404.1520(e) and 416.920(e).  Disability benefits will be denied at the fourth step if the applicant remains capable of performing PRW, *id.*, as well as at the fifth step if, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).

Insofar as Plaintiff maintains the ALJ improperly relied on the opinion of Dr. Balderman, which was outdated and stale by the time of the hearing and did not account for Plaintiff's allegedly deteriorating condition, and failed to take into consideration Plaintiff's numerous trigger points which are entirely consistent with her

fibromyalgia diagnosis, Plaintiff's Memorandum at 16-22; Plaintiff's Reply at 1-5, the court notes the record is devoid of any assessment of Plaintiff's Residual Functional Capacity ("RFC")[11] completed either by one of Plaintiff's treating physician or by a consultative physician. Significantly, "an ALJ's examination of the medical record is not plenary: 'An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.'" *Englert v. Colvin*, 2016 WL 3745854, at * 4 (W.D.N.Y. July 8, 2016) (quoting *Dailey v. Astrue*, 2010 WL 4703599, at * 11 (W.D.N.Y. Oct. 26, 2010)). If the record contains only medical findings diagnosing the claimant's impairments, but nothing relating the diagnosis to the claimant's RFC, "the general rule is that the Commissioner 'may not make the connection himself.'" *Id.* (quoting *Wilson v. Colvin*, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015)). "When 'the record contains sufficient evidence from which an ALJ can assess the [claimant's RFC],' a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Commissioner of Social Security*, 2017 WL 213363, at * 3 (2d Cir. Jan. 18, 2017) (citation omitted) (quoting *Tankisi v. Commissioner of Social Security*, 521 Fed.Appx. 29, 34 (2d Cir. 2013)). Nevertheless, where, as here, the record contains insufficient information regarding the Plaintiff's limitations, and no other evidence addressing how Plaintiff's diagnosed impairments affect her ability to perform work-related functions, there is no basis on which the ALJ can made a sound determination as to that capacity. *Kain v. Colvin*, 2017 WL 2059806,

---

[11] "The RFC is an assessment of 'the most [the disability claimant] can still do despite [his or her] limitations." *Tankisi v. Commissioner of Social Security*, 521 Fed.Appx. 29, 33 (2d Cir. Apr. 2, 2013) (quoting 20 C.F.R. § 404.1545(a)(1) (bracketed material in original)).

at * 3 (W.D.N.Y. May 15, 2017). As such, given the complete dearth of any opinion as to Plaintiff's ability, in spite of her multiple impairments, to perform any work-related functions, either from a treating source or by Dr. Balderman, even if not stale as Plaintiff argues, Plaintiff's Memorandum at 16-22; Plaintiff's Reply at 1-5, neither the ALJ's hypothetical posed to VE DiStefano, despite being more limiting than Dr. Balderman's statement that Plaintiff was only moderately limited to lifting, pushing and pulling for four to six week while recovering from her recent umbilical hernia repair, AR at 281, nor the ALJ's determination that Plaintiff had the RFC to perform her past relevant work, AR at 19, is supported by substantial evidence in the record. *Kain*, 2017 WL 2059806, at * 3. Moreover, given the Second Circuit's long-standing recognition that "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel," *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks omitted), the ALJ must develop the record by obtaining an RFC assessment or medical source statement regarding Plaintiff's ability, despite her impairments, to perform work-related functions. *See Kain*, 2017 WL 2059806, at *3-4 (remanding to ALJ for further administrative proceedings including further development of the record by obtaining a physical RFC assessment or medical source statement to fill in gap regarding the claimant's ability to perform work-related functions). Thus, upon remand for further analysis at step 3 in the instant case, the ALJ should obtain an RFC assessment from one of Plaintiff's treating sources who can provide a "longitudinal" picture of the impact of Plaintiff's fibromyalgia, as anticipated by SSR 12-2P. 2012 WL 3104869, at * 6 (providing with respect to an RFC assessment that the SSA "will consider a longitudinal record whenever possible

because the symptoms of FM [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'").

Accordingly, the ALJ is required upon remand to obtain an RFC assessment preferably from one of Plaintiff's treating sources who can provide a "longitudinal" picture of Plaintiff's impairment.  Further, mindful of the often painfully slow process by which disability determination are made, the Second Circuit instructs that some evaluation of relative hardship to a claimant of further delay should be considered, *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004), and district courts may therefore "set a time limit for action by the administrative tribunal, and this is often done." *Zambrano v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981).  In the instant case, Plaintiff filed her application for disability benefits on October 9, 2012, appeared and testified at an administrative hearing on February 8, 2014, following which the ALJ issued his decision denying Plaintiff's disability benefits application on March 4, 2015, which decision was affirmed by the Appeals Council on May 11, 2016.  As it has been more than five years since Plaintiff first filed her disability benefits application, further delay for remand is a hardship Plaintiff should not bear.  Accordingly, upon remand, the Commissioner is required to complete the additional proceedings related to Plaintiff's claim within 120 days of the filing of this Decision and Order.  *See Dambrowski v. Astrue*, 590 F.Supp.2d 579, 588 (S.D.N.Y. 2008) (imposing 120-day time limit for subsequent proceedings where five years had elapsed since the plaintiff filed his application).

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 10) is GRANTED in part and DENIED in part; Defendant's Motion (Dkt. 16) is DENIED.  The case is REMANDED to the ALJ for further proceedings in accordance with this Decision and Order.  Clerk of Court directed to close the case.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      July 9, 2018
           Buffalo, New York